UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SILICON VALLEY SELF DIRECT, LLC, d/b/a CALIFORNIA LABOR FORCE, <br><br> Plaintiff, <br><br> v. <br><br> PAYCHEX, INC., et al., <br><br> Defendants. | Case No.  5:15-cv-01055-EJD <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION, OR TRANSFER VENUE AND STAY PROCEEDINGS, OR DISMISS** <br><br> Re: Dkt. Nos. 21, 29 |

Plaintiff Silicon Valley Self Direct LLC d/b/a California Labor Force ("CLF") alleges in this action that Defendants Paychex, Inc. and Paychex Insurance Agency, Inc. (collectively, "Paychex") caused CLF to lose its workers' compensation insurance coverage.  In response, Paychex moves to compel arbitration based on the agreement it contends governs the parties' business relationship.  See Docket Item No. 21.  Alternatively, it moves to transfer this action to the Western District of New York or to dismiss CLF's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  CLF opposes all of Paychex's requests.

Federal jurisdiction arises pursuant to 28 U.S.C. § 1332.  Having carefully reviewed the pleadings, the court has determined that CLF's claims are subject to arbitration but that certain portions of the arbitration clause must be severed for that proceeding to be a fair one.  Accordingly, the motion to compel will granted in the manner stated below and Paychex's remaining requests will be denied.

Case No.: 5:15-cv-01055-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
COMPEL ARBITRATION, OR TRANSFER VENUE AND STAY PROCEEDINGS, OR
DISMISS

United States District Court
Northern District of California

## I.   BACKGROUND

The court begins with the facts alleged in the First Amended Complaint ("FAC").  CLF is a California company which commenced business in Santa Clara County in 2013.  See FAC, at ¶ 2, 3.  It employs multiple highly skilled workers in various areas of expertise which it then places with companies who have a need for a particular skill.  Id. at ¶ 2.

In or around October, 2013, CLF retained Paychex to provide payroll services for CLF's business. Id. at ¶ 6.  During these discussions, "Defendant Paychex, Inc. used and held Defendant Paychex Insurance Agency, Inc. out as its agent to provide services for and in communicating with CLF." Id. at ¶ 4.  CLF mentioned to Paychex that it needed to obtain workers' compensation insurance for its employees before it could commence operations.  Id at ¶ 6.  Since Paychex represented to CLF that it provided insurance brokerage services and could assist in obtaining workers' compensation coverage, CLF hired Paychex to procure a policy.  Id.

Once engaged by CLF, "Paychex was in charge of . . . completing the application for insurance." Id. at ¶ 8.  Paychex also interfaced with the proposed insurers to determine the information necessary for the insurance application, including descriptive codes.  Id.  CLF cooperated with Paychex by providing all necessary information, and "relied on Paychex's claimed superior knowledge and expertise in responding to Paychex's requests for information and in connection with the application process."  Id.  CLF specifically informed Paychex about the specific nature of its business, including the fact that CLF was in the business of providing temporary labor to construction and other companies.  Id.  Paychex used this information to submit an application to State Compensation Fund ("State Fund").  Id.  In late December, 2013, Paychex notified CLF that it had successfully obtained a workers' compensation insurance policy from State Fund, and CLF immediately commenced full business operations.  Id. at ¶ 9.

However, in early 2014 and unbeknownst to CLF, State Fund began to scrutinize the application submitted by Paychex to obtain the CLF policy.  Id. at ¶ 11.  On February 5, 2014, State Fund notified Paychex that it had cancelled CLF's policy.  Id.  CLF was then notified of the

2

United States District Court
Northern District of California

1   cancellation by a letter it received from State Fund on or about February 10, 2014.  Id. at ¶ 12.

2   According to the letter, State Fund determined the application submitted by Paychex on behalf of

3   CLF contained inaccurate and erroneous information.  Id.  CLF was later informed by Paychex

4   that State Fund was unaware that CLF was a temporary staffing company and that the wrong

5   codes were included on the application form.  Id.  CLF had to halt its business activities due to the

6   loss of insurance coverage.  Id.

7        Although Paychex informed CLF that it was attempting to reinstate the State Fund policy,

8   it was ultimately unsuccessful in doing so.  Id. at ¶¶ 13-15.  On June 2, 2014, CLF engaged a

9   different insurance broker who obtained a new policy with State Fund within six weeks.  Id. at ¶

10  15.

11       CLF initiated this action in Santa Clara County Superior Court on February 3, 2015.

12  Paychex removed it to this court on March 6, 2015.  CLF filed the FAC on March 24, 2015,

13  asserting negligence, breach of contract and deceit against both defendants.  This motion followed

14  on April 10, 2015.

15  **II.    LEGAL STANDARD**

16       Pursuant to the FAA, 9 U.S.C. § 1 et. seq., a written arbitration agreement is "valid,

17  irrevocable, and enforceable" in much the same way as any other contract or contractual provision.

18  9 U.S.C. § 2; see also Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 67 (2010).  "A party to a

19  valid arbitration agreement may 'petition any United States district court for an order directing that

20  such arbitration proceed in the manner provided for in such agreement.'"  Lifescan, Inc. v. Premier

21  Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004) (quoting 9 U.S.C. § 4).  When such a

22  request is made, two questions must be answered: whether an arbitration agreement exists and

23  whether it encompasses the dispute at issue.  See id. at 1012; see also Chiron Corp. v. Ortho

24  Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).  If the party seeking arbitration

25  establishes these two factors, the court must compel arbitration.  9 U.S.C. § 4; Chiron, 207 F.3d at

26  1130.

27                                                         3

28  ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
    COMPEL ARBITRATION, OR TRANSFER VENUE AND STAY PROCEEDINGS, OR
    DISMISS

United States District Court
Northern District of California

1    A motion to compel arbitration should be denied if "it may be said with positive assurance

2    that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."

3    AT&T Techs., Inc. v. Commc'n Workers, 475 U.S. 643, 650 (1986).  Moreover, arbitration should

4    be denied if the court finds "grounds as exist at law or in equity for the revocation of any

5    contract," such as fraud, duress or unconscionability.  9 U.S.C. § 2; Rent-A-Center, 561 U.S. at

6    68.

7    **III.    DISCUSSION**

8    **A.    An Arbitration Agreement Exists between CLF and Paychex**

9    "[T]he party seeking to compel arbitration[] has the burden of proving the existence of an

10   agreement to arbitrate by a preponderance of the evidence."  Knutson v. Sirius XM Radio Inc.,

11   771 F.3d 559, 565 (9th Cir. 2014).  Paychex must satisfy that burden for this motion.  In an effort

12   to do so, it produced an eight-page written agreement entitled "Paychex Productivity Services

13   Agreement" (the "PPSA"), which contains the following clause on page 4:

> **Governing Law and Arbitration.**  The Agreement and all aspects
> of the relationship between Paychex and Client shall be governed
> exclusively by the laws of the State of New York without regard to,
> or application of, its conflict of laws, rules, and principles, except
> for the arbitration agreement contained herein which shall be
> governed exclusively by the Federal Arbitration Act, 9 U.S.C.
> section 1 et seq. (the "FAA").  **Except as provided herein, any
> dispute arising out of, or in connection with, the Agreement will
> be determined only by binding arbitration in Rochester, New
> York, in accordance with the commercial rules of the American
> Arbitration Association.**  Arbitrable disputes include, without
> limitation, disputes about the formation, interpretation, applicability,
> or enforceability of this Agreement. . . .

21   See Decl. of Brian P. Madrazo ("Madrazo Decl."), Docket Item No. 21, at Ex. A (emphasis

22   in original).

23   The version of the PPSA produced by Paychex also bears on the first page of the document

24   the signature of an "Authorized Officer" from CLF under the typewritten name "Mauricio Mejia,"

25   and is dated January 5, 2014.  Id.  Mauricio Mejia is the President of CLF.  See Decl. of Mauricio

26   Mejia ("Mejia Decl."), Docket Item No. 25, at ¶ 1.  Based on this evidence, it appears the PPSA

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
COMPEL ARBITRATION, OR TRANSFER VENUE AND STAY PROCEEDINGS, OR
DISMISS

United States District Court
Northern District of California

1    qualifies as an agreement to arbitrate.

2           In response, CLF argues that the arbitration clause was not made part of the agreement

3    signed by Mejia on January 5, 2014.  According to Mejia, the document he signed on that date

4    consisted of only one page.  Id. at ¶ 6.  Mejia further states that he was never told the provisions

5    contained in the additional seven pages were included as part of the contract.  Id.  He also denies

6    ever reading or agreeing to any terms in addition to those listed on the signature page, and claims

7    he understood that additional provisions would be applicable only if certain boxes were checked.

8    Id. at ¶¶ 6-8.

9           Whether or not Mejia agreed to the subsequent seven pages of the PPSA, including the

10   arbitration clause contained therein, is a question that must be answered under state contract law.

11   See Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 892 (9th Cir. 2002).  In California, "[e]very

12   contract requires the mutual assent or consent of the parties."  Meyer v. Benko, 55 Cal. App. 3d

13   937, 942 (1976).  It may be manifested in several ways - in writing, through speech or by conduct

14   - and "may be implied through action or inaction."  Knutson, 771 F.3d at 565.  "Thus, 'an offeree,

15   knowing that an offer has been made to him but not knowing all of its terms, may be held to have

16   accepted, by his conduct, whatever terms the offer contains.'"  Id. (quoting Windsor Mills, Inc. v.

17   Collins & Aikman Corp., 25 Cal. App. 3d 987, 991 (1972)).  Ultimately, "[t]he existence of

18   mutual consent is determined by objective rather than subjective criteria, the test being what the

19   outward manifestations of consent would lead a reasonable person to believe."  Meyer, 55 Cal.

20   App. 3d at 943.

21          Here, several facts are relevant to the existence of mutual consent.  First, Paychex has

22   convincingly demonstrated that one of its sales representatives, Joanna Berner, provided Mejia

23   with the additional seven pages of the PPSA by e-mail on January 6, 2014, after an in-person

24   meeting with Mejia.  See Decl. of Joanna Berner, Docket Item No. 28, at ¶ 4.  Mejia confirmed

25

26

27                                                    5
     Case No.: 5:15-cv-01055-EJD
28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
     COMPEL ARBITRATION, OR TRANSFER VENUE AND STAY PROCEEDINGS, OR
     DISMISS

United States District Court
Northern District of California

1   receipt of Berner's e-mail by responding to it later that same day.  Id. at ¶ 5.[1]

2          Second, the signature page of the PPSA contains numerous and notorious references to

3   contractual provisions outside of those described on that page.  The second paragraph of the

4   document includes the following sentence: "Services are described in the Product Terms and

5   Conditions section of this Agreement."  See Madrazo Decl., at Ex. A.  The next section includes a

6   similar reference: "Productivity Services includes the Services set forth below as described in the

7   Product Terms and Conditions section of this Agreement."  Id.  Also, directly above the signature

8   section is the following sentence: "Client warrants that it possesses fully power and authority to

9   enter into this Agreement, and has read and agrees to the terms and conditions set forth in sections

10  1-25 of this Agreement."  Id.  Furthermore, below the signature section is a reference that the page

11  Mejia signed is "1 of 8."  Id.

12         Third, the additional seven pages of the PPSA look and read like a contract, and its terms

13  are conspicuous.  Of particular relevance to this motion is the appearance of the arbitration clause

14  itself, which is clearly labeled and emphasized in bold type.

15         Under an objective lens, the "outward manifestations of consent" demonstrate that Mejia

16  must have agreed to the terms "set forth in sections 1-25" of the PPSA by signing the first page of

17  that document.  Mejia's subjective belief that the PPSA consisted only of one page is unreasonable

18  in light of his same-day acknowledgement of Berner's e-mail which provided him with the

19  additional pages.  That position is further undermined by the numerous references to additional

20  "Product Terms and Conditions" on the PPSA's signature page as well as the numbering notation

21  on the bottom of the page, which notifies the signer that the complete contract consists of a larger

22  document.

23         In addition, Mejia's contention that he did not understand the additional provisions to be

24  part of the contract unless certain boxes were checked is an unreasonable interpretation of the

25  _____

26  [1] CLF's motion for leave to file a surreply or to strike new evidence (Docket Item No. 29) is
    DENIED.

27                                                    6

    Case No.: 5:15-cv-01055-EJD
28  ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
    COMPEL ARBITRATION, OR TRANSFER VENUE AND STAY PROCEEDINGS, OR
    DISMISS

1   signature page.  The most telling reference to the existence and incorporation of the additional

2   provisions is situated directly above his signature.  Notably, that statement is not qualified with a

3   box-checking requirement; instead, it unconditionally affirms the signer has agreed to all of the

4   PPSA's provisions.  Any alternative understanding resulting from a neglectful review of that

5   statement or any other provision of the PPSA is not a basis to escape the effect of the complete

6   contract, including the arbitration clause.  See Marin Storage & Trucking, Inc. v. Benco

7   Contracting & Eng'g, 89 Cal. App. 4th 1042, 1049 (2001) (holding that "ordinarily one who signs

8   an instrument which on its face is a contract is deemed to assent to all its terms," and that "[a]

9   party cannot avoid the terms of a contract on the ground that he or she failed to read it before

10  signing.").

11         Similarly, there can be no mistake about the character of the last seven pages of the PPSA.

12  Given their appearance and the language used, they are obviously part of a larger contract.  See

13  Rodriguez v. Am. Techs., Inc., 136 Cal. App. 4th 1110, 1123-24 (2006) (concluding that a

14  document which "like a contract" and referenced additional terms, including an arbitration

15  clause, above the signature line, was conspicuous enough for the signer to assent to all of its

16  terms).  And since these pages contain provisions that correspond with the references on the

17  signature page, Mejia could not have reasonably thought they were anything other than the

18  remaining terms of the PPSA.

19         This is not a case involving a plaintiff who leaves a business transaction unaware of an

20  agreement to arbitrate because a copy of the agreement was never provided.  See, e.g., Knutson,

21  771 F.3d at 566 (holding that an arbitration agreement did not exist between a consumer and a

22  satellite radio provider when a copy of the agreement was not provided upon the purchase of a

23  vehicle).  Nor is it a case where the circumstances surrounding the transaction are inadequate to

24  alert the plaintiff to an agreement's existence.  See Windsor Mills, Inc., 5 Cal. App. 3d at 994

25  (holding that a yarn purchaser did not consent to an inconspicuous arbitration provision on the

26  reverse side of an order form because the purchaser neither signed the form nor had the provision

27                                                          7

28  ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
    COMPEL ARBITRATION, OR TRANSFER VENUE AND STAY PROCEEDINGS, OR
    DISMISS

1    called to its attention).  Here, it is evident that Mejia - an executive with "years of prior experience

2    in the relevant market arena" (<u>see</u> FAC, at ¶ 3) - was given a copy of an agreement with an

3    accessible and conspicuous arbitration clause to which he consented by signing the PPSA and later

4    accepting Berner's e-mail without comment.  Accordingly, Paychex has satisfied its initial burden

5    to demonstrate the existence of an arbitration agreement by a preponderance of the evidence.[2]

6          **B.**    **The Arbitration Agreement Encompasses this Dispute**

7        The court must now determine whether the instant dispute is covered by the arbitration

8    clause of the PPSA.  CLF argues its claims fall outside of the scope of the clause.  The court

9    disagrees.

10        "It is well established 'that where the contract contains an arbitration clause, there is a

11    presumption of arbitrability.'"  <u>Comedy Club, Inc. v. Improv West Assocs.</u>, 553 F.3d 1277, 1284

12    (9th Cir. 2009)(quoting <u>AT & T Techs., Inc.</u>, 475 U.S. at 650).  Thus, while the court employs

13    general state law principles of contract interpretation to determine the scope of an arbitration

14    clause, it must do so "'while giving due regard to the federal policy in favor of arbitration by

15    resolving ambiguities as to the scope of arbitration in favor of arbitration.'"  <u>Mundi v. Union Sec.</u>

16    <u>Life Ins. Co.</u>, 555 F.3d 1042, 1044 (9th Cir. 2009)(quoting <u>Wagner v. Stratton Oakmont, Inc.</u>, 83

17    F.3d 1046, 1049 (9th Cir. 1996)).  Indeed, "[t]he Arbitration Act establishes that, as a matter of

18    federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of

19    arbitration, whether the problem at hand is the construction of the contract language itself or an

20    allegation of waiver, delay, or a like defense to arbitrability."  <u>Moses H. Cone Mem'l Hosp. v.</u>

21    <u>Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983).

22        "The standard for demonstrating arbitrability is not high."  <u>Simula, Inc. v. Autoliv, Inc.</u>,

23    175 F.3d 716, 719 (9th Cir. 1999).  "[T]he most minimal indication of the parties' intent to

24

25    [2] In its opposition, CLF objects to the additional seven pages of the PPSA for lack of
authentication.  That objection is moot in light of Berner's declaration because she has personal
26    knowledge of Paychex's business dealings with CLF, and is qualified to state whether or not the
additional seven pages were made part of the PPSA.

27    Case No.: <u>5:15-cv-01055-EJD</u>

28    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
COMPEL ARBITRATION, OR TRANSFER VENUE AND STAY PROCEEDINGS, OR
DISMISS

United States District Court
Northern District of California

1   arbitrate must be given full effect." <u>Republic of Nicaragua v. Standard Fruit Co.</u>, 937 F.2d 469,

2   478 (9th Cir. 1991).  Stated another way, the aggrieved party's "factual allegations need only

3   'touch matters' covered by the contract containing the arbitration clause." <u>Simula, Inc.</u>, 175 F.3d

4   at 721.

5          Here, the PPSA's arbitration clause applies to "any dispute arising out of, or in connection

6   with, the Agreement," including "disputes about the formation, interpretation, applicability, or

7   enforceability" of the PPSA.  This language is facially broad, and has been interpreted to apply to

8   all aspects of the signatories' business relationship.  <u>See</u> <u>Schoenduve Corp. v. Lucent Techs., Inc.</u>,

9   442 F.3d 727, 732 (9th Cir. 2006).  The court therefore concludes that the PPSA's arbitration

10  clause encompasses CLF's claims against Paychex, Inc. and Paychex Insurance Agency, Inc. since

11  Plaintiff treats them as one entity in the FAC and alleges it hired Paychex for payroll and

12  insurance services in October, 2013.[3]  <u>See</u> FAC, at ¶¶ 4, 6.  As pled, the FAC establishes that the

13  engagement to obtain workers' compensation insurance coverage arose from CLF's relationship

14  with Paychex as its payroll services provider.  <u>Id.</u> at ¶ 6.  In that way, CLF's claims "touch

15  matters" covered by the PPSA.

16         CLF resists this conclusion by citing to another provision of the PPSA which it believes

17  limits the scope of the contract as a whole.  It contends that one subsection of paragraph 25

18  entitled "Workers' Compensation Report Service" excludes the procurement of workers'

19  compensation insurance coverage from the PPSA entirely.[4]  CLF's interpretation, however, is not

20  

21  [3] For similar reasons, the court rejects CLF's argument that Paychex Insurance Agency, Inc.
    cannot move to compel arbitration as a non-signatory to the PPSA.

22  

    [4] The subsection states:

23  

24                 **Workers' Compensation Report Service.**  Paychex will provide
                   Client a monthly report with the calculated workers' compensation
25                 premium amounts consisting of the payroll wages and workers'
                   compensation premiums in each class code for each payroll
26                 processed by Client ("Report").  Additional reports may be
                   purchased for an additional fee.  The Service does not include the
27                 sale of workers' compensation insurance coverage ("Coverage") and

                                                      9
    Case No.: 5:15-cv-01055-EJD
28  ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
    COMPEL ARBITRATION, OR TRANSFER VENUE AND STAY PROCEEDINGS, OR
    DISMISS

1    necessarily supported by a plain reading of the subsection.  Indeed, it appears the purpose of the

2    language is to clarify that workers' compensation insurance coverage is not included in the report

3    service; it does not altogether exclude the procurement of coverage from the agreement.  In any

4    event, any difference in the parties' interpretation of this subjection does not preclude the entry of

5    an order compelling arbitration since the arbitration clause in the PPSA covers such

6    disagreements.

7          CLF also claims a separate, earlier-formed oral agreement applies to the procurement of

8    workers' compensation insurance coverage rather than the PPSA.  This argument is unpersuasive

9    under these circumstances, however.  CLF has not produced authority which holds that the mere

10   existence of another agreement precludes the enforcement of an arbitration clause in an

11   independent contract between the same parties covering the same or similar subject matter.  The

12   case relied on by CLF, Sheet Metal Workers' Int'l Ass'n Local Union No. 104 v. Natkin & Co.,

13   No. C-93-3047, 1994 U.S. Dist. LEXIS 9266, 1994 WL 361829 (N.D. Cal. July 6, 1994), is

14   inapposite.  There, it was undisputed that one of the parties had not signed the agreement requiring

15   arbitration of grievances.  Those are not the facts of this case.

16         In sum, CLF has only shown some doubt about the arbitrability of its claims.  Such doubt

17   must be resolved in favor of arbitration.  Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25;

18   Westinghouse Hanford Co. v. Hanford Atomic Metal Trades Council, 940 F.2d 513, 517 (1991)

19   (recognizing the presumption in favor of arbitration "applies with particular force where . . .the

20   arbitration clause is phrased in broad and general terms.").  Accordingly, the court finds the

21   PPSA's broad arbitration clause applies to this dispute.

22         **C.     Portions of the Arbitration Clause are Unconscionable**

23         CLF argues the PPSA's arbitration clause is unconscionable.  "Under California law, a

24   contractual clause is unenforceable if it is both procedurally and substantively unconscionable."

25

26              is not proof of Coverage.  Client is solely responsible for obtaining
              and maintaining any required Coverage.
27                                                10

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
     COMPEL ARBITRATION, OR TRANSFER VENUE AND STAY PROCEEDINGS, OR
     DISMISS

United States District Court
Northern District of California

1   Davis v. O'Melveny & Myers, 485 F.3d 1066, 1072 (9th Cir. 2007).  Procedural unconscionability

2   focuses on oppression or surprise due to unequal bargaining power, while substantive

3   unconscionability focuses on overly-harsh or one-sided terms.  Stirlen v. Supercuts, Inc., 51 Cal.

4   App. 4th 1519, 1532 (1997).

5          While both types of unconscionability must be present before an arbitration agreement can

6   be declared unenforceable, it is not necessary they be present to the same degree.  Davis, 485 F.3d

7   at 1072.  For this reason, "[c]ourts apply a sliding scale: 'the more substantively oppressive the

8   contract term, the less evidence of procedural unconscionability is required to come to the

9   conclusion that the term is unenforceable, and vice versa.'"  Id.  Furthermore, "a claim of

10  unconscionability often cannot be determined merely by examining the face of the contract, but

11  will require inquiry into its setting, purpose, and effect."  Perdue v. Crocker Nat'l Bank, 38 Cal.3d

12  913, 926 (1985).  The burden is on the party challenging the arbitration agreement to prove both

13  procedural and substantive unconscionability.  Serafin v. Balco Properties Ltd., LLC, 235 Cal.

14  App. 4th 165, 178 (2015).

15         CLF contends the PPSA is procedurally unconscionable because it was presented on a

16  take-it-or-leave-it basis without an opportunity to negotiate its terms.  CLF is correct that the

17  PPSA's adhesive nature imparts it with a degree of procedural unconscionability.  See Soltani v.

18  W. & S. Life Ins. Co., 258 F.3d 1038, 1042 (9th Cir. 2001) (noting the issue of procedural

19  unconscionability "focuses on whether the contract was one of adhesion"); Kinney v. United

20  Healthcare Servs., Inc., 70 Cal. App. 4th 1322, 1327 (1999) ("Procedural unconscionability

21  concerns the manner in which the contract was negotiated and the circumstances of the parties at

22  that time.").

23         CLF also correctly identifies the damages waiver provision as substantively

24  unconscionable.  That provision precludes the arbitrator from awarding exemplary or punitive

25  damages, "or any damages excluded in the Limit of Liability provision" of the PPSA, which

26  provision also exempts under all circumstances "special, indirect, incidental, or consequential or

United States District Court
Northern District of California

11

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
COMPEL ARBITRATION, OR TRANSFER VENUE AND STAY PROCEEDINGS, OR
DISMISS

1   punitive damages, including any theory of liability (including contract, tort or warranty)." This

2   expansive liability limitation and preclusion of nearly every type of damages claim is obviously

3   overly-harsh and one-sided, and has no other purpose than to maximize Paychex's advantage.  See

4   Bolton v. Super. Ct., 87 Cal. App. 4th 900, 910 (2001).

5        Additionally, CLF has met its burden to demonstrate that the forum selection clause, which

6   designates Rochester, New York, as the arbitration situs, is substantively unconscionable.  "In

7   order to assess the reasonableness of . . . 'place and manner' restrictions, the respective

8   circumstances of the parties become relevant."  Bolter, 87 Cal. App. 4th at 909-910.  Here, the

9   relevant "respective circumstances" are these: CLF is headquartered in San Jose and "is a small

10  business that interacted with Paychex entirely within California."  See Mejia Decl., at ¶¶ 9, 12.  It

11  would "incur significant expense and great inconvenience to its business operations and

12  employees" if ordered to arbitrate across the country.  Id. at ¶ 12.  Paychex, in contrast, "has

13  offices nationwide."  Id.  With this disparity, "it is simply not a reasonable or affordable option for

14  [CLF] to abandon [its] offices for any length of time to litigate a dispute several thousand miles

15  away."  Bolter, 87 Cal. App. 4th at 909.

16       Because the PPSA is not permeated with unconscionability, the court will sever the two

17  unconscionable provisions.  See Cal. Civil Code § 1670.5(a).  The arbitration clause will

18  otherwise be enforced.[5]

19       **D.    Conclusion**

20       For the reasons explained, Paychex has established the two factors necessary to

21  successfully compel arbitration.  First, there exists an agreement to arbitrate between Paychex and

22  CLF in the form of the PPSA.  Second, the way in which CLF has pled this action subjects the

23

24  _____

[5] Since the forum selection clause is unenforceable, the court will order the arbitration to occur
25  within this district.  See 9 U.S.C. § 4 ("The hearing and proceedings, under such agreement, shall
    be within the district in which the petition for an order directing such arbitration is filed.").
26  Accordingly, there is no reason to decide whether the court may compel the arbitration to occur in
    another district.

27                                                        12

    Case No.: 5:15-cv-01055-EJD
28  ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
    COMPEL ARBITRATION, OR TRANSFER VENUE AND STAY PROCEEDINGS, OR
    DISMISS

United States District Court
Northern District of California

claims to the PPSA's arbitration clause. Once the unconscionable provisions are severed, this action must proceed to arbitration. See Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985) ("[D]istrict courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").

With that result, the court need not address Paychex's remaining requests. See 9 U.S.C. § 3. Such relief will be therefore be denied.

**IV.    ORDER**

Based on the foregoing, Paychex's Motion to Compel Arbitration, or Transfer Venue and Stay Proceedings, or Dismiss (Docket Item No. 21) IS GRANTED IN PART and DENIED IN PART as follows:

1.    The provisions of the PPSA that (1) require arbitration occur in Rochester, New York, and (2) preclude the arbitrator from awarding "exemplary or punitive damages, or any damages excluded in the Limit of Liability provision," are severed from the arbitration clause.

2.    The motion to compel arbitration is granted based on the arbitration clause as modified above. The arbitration shall occur within the geographic boundaries of this judicial district.

3.    The remainder of the motion is denied pursuant to 9 U.S.C. § 3.

This action is STAYED in its entirety pending the final resolution of the arbitration. The Clerk shall ADMINISTRATIVELY CLOSE this case.

**IT IS SO ORDERED.**

Dated:  July 20, 2015

EDWARD J. DAVILA
United States District Judge

13